Hold on a second Councilor, you're losing your audience. Okay, good morning. Good morning, Your Honors. May it please the Court. My name is David Pixley and I represent the appellants, the employer. The appellees, trustees of the Local 553 Benefit Funds are simply the funds initiated litigation in 2019 against the employer to compel an extensive and intrusive audit of the employer's books. The Teamsters Local 553, the union, is not a party to this action. However, at all times, the union and the employer were the bargaining parties. The funds, as downstream third-party beneficiaries to the deal struck between the bargaining parties, brought this action to compel compliance with an audit that far exceeds the scope of the employer's contractual obligations. Because the audit bell cannot be unrung, we are asking this Court to reverse Judge Block's order, which operates to compel compliance with onerous obligations. Did you make this argument before Judge Block? I did not, Your Honor. I was not counsel at that time. Did anybody on your side make this argument? Yes, there were arguments briefed on cross motions for summary judgment, Your Honors. Can I ask, if you were to prevail and it were vacated and remanded for trial, what evidence would you put on to refute the idea that this was conduct that constituted consent to enter into the 2013 to 2016 master contract? Yes, Your Honors. I would put in the evidence that the current facts, which are even more favorable to the employer than in AGL Industries v. Ironworkers Local 40, in which Judge Block did hold that the employer did not adopt the CBA by its conduct. Specifically, those relevant facts in this case are not in dispute. Aren't the facts that were there sufficient so that it is hard for us to say that what the district court found was so bad that we don't go along with the facts? It was so bad. Again, we're appellate court, not a district court. Yes, Your Honor. I would have loved to have the opportunity to try this case, but I think . . . Well, this is a de novo question. Yes, it is, Your Honor. My way of answering that question is I think your sentence had a colon and you were going to give the answer to what you would put on for evidence. Yes, the facts are overwhelming. Rather than describe them, how about giving us a copy? Well, the standards set forth by this court in Brown v. Volante is what I would start with, because the most important factor in that case is whether the employer had previously been signed to a CBA. So that we know, I think it's undisputed that there's no previous signature, signed CBA, right? That's correct, and in fact . . . What are the new facts that you would put out there? Yes, Your Honor. I'm going to provide those to you now. So, those additional facts are there was a signed agreement. The master contract was not it. It was the bulk contract, which covered all drivers. Further, Mr. Dimopoulos, longtime head of the union and fund trustee, confirmed that only the select specified employees initially were covered in 2013. Mr. Happy confirmed this understanding on behalf of the employer, and in fact . . . These just seem sort of question-begging or assuming the conclusion, right, that there's the bulk contract. The question is whether, through the treatment of the three employees, there was consent to enter into an additional contract, the master contract. There's more to the story, Your Honor. Okay. And the testimony that, I think, the declaration testimony, similarly, just sounds like a statement of the conclusion. So, I mean, one thing I looked for in the records, and tell me if I missed it, is here are all of these employees engaging in what would constitute master work, who we didn't treat like master work employees. Yes. Tell me where that is. Yes, Your Honor. There is a lot of testimony and a bit of confusion about what's covered by the master contract and what type of work is covered by the bulk contract that the employer actually signed. But what is crystal clear is the mutual understanding of the parties that only those specified employees would be covered . . . Would you answer the question that was just posed, which is where is the evidence of any additional . . . The remittance reports, Your Honor. The remittance reports were auto-generated by the fund, and a fund employee testified that she only included the name of the specified employees, and the employer merely included the hours for those specified employees, tabulated the amount of the contributions, and reported them until that third employee retired in 2015. Maybe I don't understand, but that seems to me non-responsive to the question. The question is . . . So, I'll ask it as a yes or no question. Was there, were there, other employees engaged in master work that were not treated as though, like the three who were, as though they were under the master contract? Well, and that's what my friend is trying to determine through his audit, because, and what we're trying to refute is . . . So, I understand that that is what they're trying to show in the audit. Does, I think the implication of that question is there is nothing in the record that we could look to, to conclude that there were people engaged in master work who weren't treated as though they were under the master contract. No, but there is evidence in the record to conclude that it doesn't matter, Your Honor. So, let me, let me ask something else. Between 2515 and 2517 . . . Yes, Your Honor. There is no argument that there are people, you don't make any argument that there are people who are there and who are not being treated as if they were master work employees. You don't cite anything there, do you? No, Your Honor, because it's simply not relevant. Well, it would be relevant, because if there were people in that category who were not treated that way, then you might have an argument that the three people before were being treated that way as on the basis of an individual treatment and not under a master contract. Yes. But since you don't have anybody there, and the only people is after, after there is a master contract, you can't make the argument that it was wrong to find that there was a master contract that had been adopted. There had been a master contract that was adopted, Your Honor. You're correct. for the specified employees. That's the, the evidence in this case overwhelmingly supports that the deal struck by the bargaining parties related to specified employees, and furthermore . . . Wait, wait, wait. The 2017 MOA . . . So, now I'm, now I'm a little confused. You're saying that the company adopted the master contract . . . No, Your Honor, I'm saying that they're for specified employees. For the three specified employees. And in your reply, you make that same concession. You just try to, the argument you're making is that they only adopted it for those three and not for anybody else. Well, absolutely. They had no reason to, and the deal, all the evidence of the union trying to negotiate for years and years and years would be irrelevant. The 2017 MOA would be meaningless if the inference is that all along they had an obligation under a master contract. Why would the union agree in 2017 to a limited obligation of only five people? Well, let me add to this. If they were already obligated for everyone, that makes no sense. If there were only three people . . . Yes, Your Honor. . . . in the universe engaged in master work . . . Yes, Your Honor. . . . and the employer consented to agree to enter into a new master work agreement, then there would be a new master work agreement that applied to everyone, correct? There was never a master agreement that applied to everyone. There was only specified master contract employees. And until 2017, there was not . . . from 2015 to 2017, there was no obligation. The MOA of initially covering five drivers, the most obvious inference of that 2017 MOA, Your Honor, is that prior to that, there was no obligation under the master agreement. Why would the union limit the obligation of this employer to specified employees again if prior to that 2017 MOA, everyone was covered? That would make no sense. Why would the union negotiate for specified employees to be covered initially in 2017 if this employer was already bound to that master contract for its entire workforce? That flies against common sense. All right. So, you reserved some time for rebuttal. I did, Your Honor. Thank you. So, we'll see you soon. We'll hear from you in a moment on the other side. Good morning, Your Honors. May it please the Court. I'd like to just make a few points before responding to counsel's arguments. Much of this case has to do with delay. The trustees are trying to satisfy their fiduciary duties to review records that are necessary to determine what contributions might be delinquent. And this issue goes back to 2018. The case was filed in 2019. During these proceedings, as Judge Block noted at the last moment, defendants began to argue that there were three entities that had different roles. Only one of them had employees. That compelled us to amend our complaint to allege alter ego relationships. Judge Block found, indeed, that there were alter egos, and that finding was not on appeal. We believe that Judge Block carefully and comprehensively reviewed the alter ego criteria that are found in Volante and its progeny. Is there any record evidence, just to pick up on the question we posed to your friend, that you're aware of, of other employees who might have been like the three specified employees subject to a master contract during the building period? Your Honor, that's a good question. I think that the record reflects, and the testimony reflects, there were arguments between the union and the employer. The union always took the position there were more than the three. This came up again in the 2017 negotiations. They agreed to cover initially five, but I think contrary to what you... I mean, that sort of supports an inference that there were five more, doesn't it? Yes, well, the three who were covered in 2013, up to three from 13 to 15, they had disappeared by 2017. Now there were new negotiations about who was going to be covered, how many were going to be covered. But I believe, I just want to point out, I don't think there's anything in the record to reflect the kind of disavowal of the master contract the UMEC is suggesting. We cited some cases, Kobe, I believe, Intercounty, where the courts found there's got to be an express disavowal. What you find in the record is just... Is there anything in the record that would suggest that there were employees who did what these three did, and that between 2515 and 2517, they were covered under the bulk contract rather than under the retail contract, the master contract? I'm not sure, Your Honor. I think I, you know, I believe that's really the purpose of the audit. That's what you want to find out. That's the purpose of the audit, and the problem here is that... Well, because if there were some who were not treated that way, at least the argument could be made that the three ones before were being treated that way on the basis of an individual contract with each of them, rather than a master contract. Now, that's not an argument that the other party makes, and it could only come up probably after you won and you looked and came up. Yes. So that makes it a bit odd, but I was just curious. I'm not sure I could answer about who was in those few years, but I can say that we're very skeptical about the argument that there was an initial accommodation. First, because I don't mean to be cynical, but it's very rare to see employers who are bending over backwards to accommodate unions, and especially in this fact setting where we believe the employer was going out of its way to obscure the identity of the employer. Let me flip it a little bit. To what extent can we consider the conduct of the unions, the funds here, in determining or assessing whether there was a meeting of the minds as to the master contract? I'm sorry, the conduct of the funds or the union? Of the unions. Oh, the unions, yeah. Well, the union, there's correspondence in which the union advocates for holiday pay. No, but for some period of time, but you can correct me if you think I'm wrong, you were fine with just having the three union employees, the three drivers, the specified employees, covered under the master contract and no one else. Is that right? I think that the testimony that was cited, and I'll try to find it in my notes, but I think that the testimony reflects a debate. I think Mr. Dimopoulos, who's both union president and also a trustee, made it clear that the employer was resisting acknowledging additional employees. And they point out, with respect to Mr. Dimopoulos' testimony, that that is actually evidence that he did not believe that they were subject to the, or that he thought that they didn't believe that they were subject to the master contract. I think that's the characterization by UMIC. I think our view is it shows, again, a debate about how many are covered. And that debate came up again in 2017. They argued and argued they ended up with initially five. But, again, there was no disavowal by the, there's never a point where the employer made it clear, I believe in the record, that they were rejecting or repudiating the master contract. Well, so how can that be? So as I understand it, but again, you can correct me if you think I'm wrong, they made the contributions with respect to the three specified employees. And once the last person retired, they stopped. And then there was a dispute about whether they should, under the master contract, make contributions to anyone else. So how is that not, how does that not constitute a form of disavowal that we might recognize? I think if you look at the case law that we cited, I mean, of course, it's the essence of any adoption case that the employer has failed to sign the contract. But you need some express disavowal. There's a case, Empire versus Conway, cited by an employer. And in that case, the employer said at least three times, adamantly, we are not bound by this contract. We are not bound by this contract. And the court also found the principle highly credible was the term used. In this case, unfortunately, the UMEX officers have not been particularly credible. Even the arbitrator in the 2017 case called them disingenuous for denying they understood the distinction between the bulk. I mean, that sounds like a thing to be decided at trial, credibility and the like. And Judge Loyer's question, I think, goes to whether there's an inference of disavowal available. And I'll throw another fact in. The signing of the bulk contract and the non-signing of the master contract, does that allow an inference of disavowal of the master contract? Well, going back to 2017, the employer signed a document stating that it would execute the master contract. And it still didn't execute it. I'm sorry, still what? It was supposed to execute the master contract under the 2017 MOA. But, I mean... Don't we go back to the issue of whether there were some people between 25, 15 and 17 that would be covered by the master contract if there was a master contract? And if there were some and they didn't sign it, that would be a disavowal. But the question is, were there? And that's what you're trying to find out for other reasons. So it's a peculiar thing because what you're trying to find out might be what might give them an argument. But until that's found out, it's hard to see what their argument is. You see what I'm saying? Yes, yes. That's the pickle. That's the pickle, indeed. So I just want to note, I know my time is running short. Counsel referred to the audit as intrusive. It's not intrusive. Again, the trustees have strict fiduciary duties to satisfy. Those are referenced in central states and other cases. They've got to satisfy their fiduciary duties to determine whether contributions are owed to protect the participants and beneficiaries of the fund. The records at issue here were general ledgers and delivery tickets. Those are standard records that are requested, especially here in the trucking industry. They're necessary to determine if everybody was reported, contributions were paid on their behalf. And the company has simply refused to provide them. And that's why the auditors have insisted on them. I wanted to just remark for a moment on the issue of, I believe the employer argued that there was no prior contract signed by UMEC. But every fact setting is different. Here, UMEC had purchased assets from Apollo, and so they couldn't have signed the prior contract. It was Apollo that had a contract, both a bulk contract and a master contract. The argument that I think your counsel for the company makes is that there is no case like this where an employer has not previously signed a CBA, but is nevertheless made responsible for contributions based on its conduct. Is that correct? No, Your Honor. We cited to a case inter-county in which the court noted that the employer did not sign the prior contract. And there, the court said that it was that factor of whether the employer had signed a prior contract. They said it was not insignificant, but it wasn't significant enough to prevent the court from finding that there was adoption. In the case law, courts often cite successorship cases. And of course, by definition, there, the employer, the successor did not sign the prior contract, which was entered into by the predecessor. I think it's important to note again, UMEC conceded they were mirroring the prior relationship. But that relationship was a bulk contract and a master contract. The bulk contract covered the bulk work. The master contract covered the master or the retail work, as it's called. So the inter-county case is an Eastern District District Court case. Is there a circuit court case of which you're aware? I'm not sure we found a circuit court case. But again, it is true that the courts always note every fact setting is different. Well, maybe you disagree with this. That is a somewhat significant fact, right? I think that in each one of these circuit court cases we pointed out, or other circuit courts have pointed out, that there was a previous signing of the CBA. And that, in weighing whether or not conduct ties an employer to an unsigned CBA subsequently, the fact that they previously signed the CBA is not unimportant. Let me put it that way. Would you agree with that? I wouldn't say it's an irrelevant factor. I don't think it's not always emphasized in the case law. And I think here, again, because UMEC purchased Apollo's assets in 2013, it simply couldn't have signed the prior contract. But it did say it was mirroring that relationship. Let me just ask you one quick housekeeping matter, because I did ask your friend. They make this argument, I think in their reply brief, that the injunction, that is, this directed audit that Judge Block ordered, exceeds the scope of the trust agreement, as I understand it. Did they make that argument, to your knowledge, before Judge Block? So I want to acknowledge that we argued that at one point they had not previously made the argument. And I think they pointed out that that issue of the trust agreement language was cited previously in the summary judgment papers. However, I don't believe it was argued that even if there were adoption, then there could be no audit rights. Thank you. Thank you. Yes, Your Honor. I wish I had more than two minutes, but I'll use the two minutes. Thank you. The inter-county glass, there's no previous signed CBA. My friend is referring to a signed job agreement. That employer never signed the CBA previously before the conduct. And as far as the fiduciary duties referenced by my friend, they do have fiduciary duties, to collect what's owed and nothing more. This is a case of backdoor bargaining. The union couldn't get the contract they wanted. They couldn't get it done at the bargaining table. And they weren't satisfied, so the union weaponized the funds and the big stick that's given them under ERISA section 515 and 502A3 to pursue employers for failing to make contributions. This is a collection action that they brought. This is not the time to dispute the arrangement between the parties, which could not have been made more clear in the testimony provided to this court in the record from Mr. Dimopoulos, from the union itself. They identified three employees, and he said that those were the three covered by the master contract. And in response to his efforts— How much, by way of contributions, is at stake here? Yes, there were—I'm sorry, could you repeat? So largely this is about the audit and potentially contributions. Yes, there's two audits. There's either the audit of the specified employees or the audit of this entire company. And I'm asking about the entire—your full exposure to the entire company. What is the total amount estimated in terms of contributions? Oh, Your Honor, we don't know because that audit hasn't been conducted, and it doesn't need to be conducted. Because in response to Mr. Dimopoulos' attempt to expand the obligation beyond the initial 2013 employees, the employer responded, and Mr. Dimopoulos testified, the employer stated— But your answer is we don't know. No, the answer is we do know, Your Honor, because the arrangement between the upstream bargaining parties, the union and the employer, was for initially to cover specified employees, not the entire workforce. Which is why the employer responded, no, no, no, no. Thank you very much. Thank you, Your Honors. The result of the decision will be argument in Diaz v. Bennett, case number 221678. Thank you. We're the same height. We all have tall personalities. That's great. People of reasonable height. Hold on a second. This looks like a law school class behind us, behind you. And they missed the ERISA argument. Did Your Honor want to say a word to the class before I begin?  Well, are you from which law school? Columbia Law School.  Welcome. Still good morning, Your Honors. Good morning. The question in this case, the issue presented, is whether the district court properly concluded that appellants' request for release from prison, based upon the alleged unconstitutional conditions of confinement, must proceed... So, you're fine. I'm sorry to... Go ahead. ...stop you. Have at it. We're all friends here. We all know each other. This, to me... I'll ask the question. Why isn't this completely... So, the facility is closed, about which he initially complained. Yep. He has been transferred to another facility. And he can bring a claim, presumably, in connection with the conditions of confinement at that facility. But he has not yet. And I take it that you think at some level this is capable of repetition, but we know nothing about this new facility. So, why isn't this moot? That's the elephant in the room. There's no question, Your Honor. As Your Honor just alluded to, the standard, the exception to the mootness doctrine is capable of repetition or, yet, evading review. This is certainly an issue that's been evading review, as this court has wanted to rule on this issue for about five years. Every single time a case gets certified to have this question presented, something comes up, so it has to be rejected, and this court looks for another case. So, this case is certainly... This is an unusual event that a correctional facility closed. That's what prompted the transfer, or am I wrong about that? No, that is what occurred. Don't you have a stronger argument that the cases hold that if a transfer destroys jurisdiction, then permission for the transfer must be asked? And here it was not. And the transfer allegedly destroys jurisdiction because of mootness. So, we have a situation where at least two circuits, the CISC circuit in Chen and the DC circuit in Hardane, have held that that would not destroy jurisdiction. Now, assuming we have jurisdiction, then the question of habeas versus 1983 comes up. And, by the way, I'm very strong on the difference, and I would decide that your way. But if we get to that point, don't we then have a right to look at the merits and say these merits ain't there at all, and so affirm on a perfectly sensible ground that there are no merits. But having clarified an issue that needs clarity, having decided that it isn't moot. Your Honor, I think that is certainly one way that it could be handled. There's no question about that. Obviously, the district court never had the opportunity to decide on the merits because it decided to rule on the jurisdictional basis. But certainly, that would be one way to resolve it. And that would actually be a way that would be helpful even for this defendant. Because then, when filing a similar petition against his new facility, Sing Sing, he would have the guidance of knowing, okay, don't make the same mistake. Or do make the same mistake. Correct, Your Honor. What condition of confinement claim could not be brought as a habeas, if any, so long as the relief sought is released? A condition that could not be, that could be changed. So, yeah, no, a condition, I'm trying to think if there was a case on this, that would be the government's case, or I should say the state's case, where what was being complained about, this was the Second Circuit's case in Fielding, where what they were complaining about was that the defendant had been particularly liable to sexual assaults based upon his type of conviction. And in that case, the court ruled, well, wait a second, we can, in fact, there are conditions that can be changed so that that problem can be prevented. And because that problem can be prevented, it should be decided not under habeas, but under a 1983 claim. Which would make sense, because a 1983 claim is generally used for... As alleged, solve the problem in the way that it wasn't plausibly alleged in Fielding. Fielding. Yes, Your Honor. I mean, this is a different case, obviously, than in Fielding. And, of course, this is also a pro se defendant, so we have to take all inferences in the light most favorable to him. One thing that he alleges specifically is that he could not be confined, his quarters have to be so closely confined that under no condition could he be protected from COVID-19. Let me just go back to this. If a transfer would meet his requirements without having him be released, then 1983 would be the appropriate ground. If a transfer would not, then under Heck v. Humphrey it has to be habeas. Do you concede that? I agree with that, Your Honor. That's exactly the point. But the claim here is that the transfer would not do that, and therefore habeas has to lie. That's correct, because the claim here is that due to the uniqueness of this particular mental health issue that was being raised, that there is no condition of confinement that could protect him. And that's an issue of the merits, which we may or may not decide, but it does not change the jurisdictional issue. That is correct, Your Honor. I guess my question is about the specifics of this petition and recognizing it was pro se and we should be solicitous and inferences in favor. What would we look to? There is a way in which the mootness and the cognizability under habeas question feels like they start to fold on each other, but what would we look to in thinking about fielding? What would we look to in the petition to see a contention that isn't facility specific such that the allegations maybe don't plausibly make a claim under habeas in the way that fielding did it because it could be cured by a transfer? All prison facilities, Your Honor, require close quarter confinement of the inmates. There is no facility that would have him allow him to be properly away from any other inmate. Even Florence ADX, which is the most secure facility in the country, has had a problem with COVID going from one inmate to another. So you say if the alternative were to move him to home confinement but not release, where that would not be so, then 1983 would lie. But that was not suggested as a possibility. Nor requested, Your Honor, since he's requesting immediate release. You're seeking release with no parole supervision. What? I'm sorry? You're seeking release with no kind of home confinement or other supervision, I presume. That is what he's requested, yes. Although I think supervised release might not make a difference to the conclusion. I didn't understand the supervised. You're not battling supervised release. It's parole we're talking about. Parole. Parole, yes, Your Honor. But there's no, I don't know whether or not he'd have to check in with a parole officer on a routine basis would have any impact on the rest of the question before you. I guess release to. Just to play out the line a little bit. If the relief he's seeking, you're saying he could get the relief he's seeking by being released but with supervision terms. Under habeas, yes, correct. And if he violates those terms, what happens? That would be for a district court to decide. And then what happens? I mean, what are the options for the district court? The district court could violate his parole and send him back to jail. The district court could . . . Back to jail, which is unconstitutional to hold him there. That would be, it could also order that he be held in home confinement or house arrest as it's known in the federal system. So there are options that could avoid . . . And if he leaves home confinement, same question, I suppose. There's a lot of ifs on that. Can I ask a little bit of a presider's indulgence? I'm sorry? The question of cognizability under habeas versus 1983, is that a jurisdictional question? It's our position that it is, yes. It is. So we have two jurisdictional questions we potentially need to answer, mootness and cognizability. Yes. Do you have a view as to whether we have to sequence those in either way? I think the answer is no under Seneca, but tell me. And if we should sequence them in either way. I don't take a position on whether or not they, in which position that they're addressed in. I do absolutely think that the correct jurisdictional answer is that when you're seeking immediate release, habeas is the only avenue that could be sought. But I want to know whether there is any reason, really, on the facts of this case, why if we decide that there was a jurisdictional error, we can't look at the merits. Now, you know, in most cases, we turn it over to a district court. But what the claims are now, which are being said make things moot, and my problem is that mootness doesn't apply if you're making a claim on the merits. But are the merits so clearly not there that it is perfectly appropriate for us to make all the jurisdictional decisions and then still rule against you on the merits without sending it back to the district court? Because there ain't nothing to this case. Your Honor, I think there was an attorney earlier today that had a line that I thought was particularly appropriate maybe here. This court has the leeway to shine the diamonds that's pulled from the ground. I would stand by that position as well. We reserve decision in that case. Hello, Mr. Feinberg. Likewise, Mr. Feinberg. Ira Feinberg, Deputy Solicitor General for the Respondent. Thank you for welcoming me. I'd like to address the mootness question first because I think, Judge Calabresi, I don't agree with you about this transfer issue somehow making the case not moot. I mean, the facility has been closed, and all of his complaints is about, all of the allegations in his complaint are about how the treatment and the inadequate treatment at the Sullivan Correctional Facility where it used to be, and it is well settled under the- Is there a way of reading his complaint? I did not, but is there a way of reading his complaint to suggest that this goes well beyond the Sullivan Correctional Facility? You could read it that way, and certainly I suspect if he had been incarcerated at a different facility, you probably would have seen a very similar complaint, but nevertheless his allegations talk about how the people at the Sullivan Correctional Facility were not complying with CDC guidelines and that they weren't providing adequate masks and personal protective equipment. Yeah, but just in terms of how we treat pro ses, isn't it better to assume what is really there? But he's saying in this current situation with COVID, being in jail is unconstitutional, and it doesn't matter if I'm in Jail 1 or in Jail 2, it is unconstitutional, and therefore I have an argument and I should be released, and therefore this argument should be unabased, and then at that point we look to the validity of the argument, and if you win on that, what objection do you have? Why does it matter to you? Why do you want us to do something which may get us into trouble with other circuits, which may make things difficult for other people who are transferred, when in fact they may have an argument, rather than dealing with something which is both simple and allows us to make clear what the courts get fouled up all the time, the difference between habeas and 1983. But, Your Honor, it is well settled under this court's precedent and around the country that when a prisoner who seeks only prospective relief is transferred to a different facility, that that case is moot, and that's true under 1983, and it's true under 2254. This court has specifically held that in a habeas case, Thompson versus Chomsky. That is so if the difference between the facilities make a difference to a person's claim. Well, we don't know anything about how other facilities might have handled him differently. Maybe because of his claims, I mean, he claims he's medically vulnerable because he was obese and had high blood pressure. Maybe they would put him in a hospital ward instead of putting him with general population. We don't know how anybody else would have handled it. But, you know, as much as the court might like to reach the merits and resolve this issue, the bottom line is that I think it's well settled under these circumstances that a case is moot, and the court really can't avoid that conclusion. And the rule that you were citing about not being able to transfer the prisoners in order to defeat jurisdiction really doesn't apply here. I don't think that that rule has ever been applied to a situation where a prison facility was closed for budgetary reasons like this one was. So, you know, I really think that the court, I mean, I'd like to reach the merits, frankly, as well. The merits are more interesting than the mootness question. But I think the court really is stuck with saying, look, this case is moot. And the idea, Mr. Bacharach really hasn't questioned that the case would otherwise be moot except for the exception for cases that are capable of repetition. He's relying on the exception, right, which suggests that there's a general mootness issue there. Right. So what about the exception? The exception has two requirements. The challenged action has to be too short in duration to permit it to be fully litigated, and there has to be a reasonable expectation that the same party will be subject to the same action again. And neither one is true here. This case has been pending for four and a half years, more than four and a half years. There's no reason why this case couldn't have been resolved on the merits. We made a mootness motion back in the fall that the court denied, and we accept that result. The court was apparently fully ready to resolve the merits of this issue until, out of nowhere, the prison facility got closed and effectively mooted the case. So there's no reason why this case, but for that fact, couldn't have been resolved here and why this circumstance is one that is capable of- So he could raise the claim, obviously assuming all bells and whistles that there's a good faith basis, but he could raise the claim either with counsel or pro se as to his current facility. He is now at Sing Sing. He could raise a claim at Sing Sing. But the claim would have to be based on what conditions are now, not on what conditions were in 2020. And frankly, I think the claim at this point would be frivolous. Now you're going to the merits. Conditions are, you're going to the merits. Let me ask you a slightly different question. If we have two jurisdictional issues, and one of them is complicated, the mootness one. Let me, you say it isn't, but let me say I think it is. The other one- And which one gets us in trouble with the other circuits? I wasn't clear on that one. I don't think either one gets you in trouble with the other circuits, but go ahead. And the other one is a jurisdictional issue between habeas and 1983, which is a jurisdictional issue and is quite clear and clearly decided wrongly. Do we have a choice on which jurisdictional issue we can do? Even though generally mootness comes first. Can I take issue with the idea that whether it's properly considered a habeas petition or a- You disagree, that's your- 1983 is jurisdictional? I think the issue is does this complaint state a claim under the statute that's cited? And I don't think that's a jurisdictional- It's sort of like a Morrison issue, which is not a jurisdictional issue. Extraterritoriality is not a jurisdictional issue. It's about the statute. To me, this issue is whether the complaint states a cause of action, which is an issue on the merits, not- is a subject matter jurisdiction question. I was not aware of that, yeah. We haven't- We haven't said directly no, but it's plausible to view it that way. I mean, you know, you can view anything as jurisdictional and probably shouldn't view anything as jurisdictional. That's right. Why don't I turn to the merits, if I might? If the court wants to reach the merits, that would be great. There are four points that I'd like to make as to why the decision of the district court here, saying that this cannot be brought as a habeas position and can only be brought as a 1983 action, is the correct result. First, this court's decision in fielding, which makes clear that a claim that was complaining about medical conditions at the facility and saying he couldn't be hospitalized, he couldn't be incarcerated because he couldn't get the psychiatric care that he needed in prison, does not present a 1983- excuse me, does present a 1983 action, does not present a habeas cause of action. And so I think the result here, the only result in this case consistent with that separate precedent, is to affirm the decision of the district court. Secondly, the Supreme Court's language, even though they've left this issue open on several occasions, the Supreme Court's language, for example, most recently in the Nance case, they described the case where a prisoner was challenging the quality of the medical care that he could get and the crowding conditions in the hospital, which fundamentally are what are at issue here, as the classic case that has to be brought under 1983. But that's where the claim generally is that these can be improved. But in this case, what makes this case odd is the specific claim that they cannot be improved. That's the difference. Of course, if you're talking about medical conditions and say they can be improved, that's a classic 1983. But if you say the only way out of this, given my condition, is to be released, then that's a classic habeas. Then we can look and say, but that's absurd in this case, and decide against the guy on the merits. But the claim is this can only be done out of prison, and that's a classic habeas. But I think as Judge Nation's question to my friend, Mr. Bacharach, earlier, that claim that I need to be released because the conditions are so bad or so dangerous to my health or whatever, could be made in any case, and you could convert a... Well, and if it is made in another case, then you look at it as habeas, and if it is as absurd as it would be in most of those cases, the case gets kicked out quickly, which is probably the proper way of doing it. But to continue the points I was going to make, this... Congress, at the same time you passed the Anti-Terrorism and Effective Death Penalty Act, Congress in 1996 passed the Prison Litigation Reform Act, which imposed very severe restrictions on prisoner lawsuits that were seeking release from prison. And to allow someone to evade that restriction, those restrictions that imposed... And can you still get release under 1983? Yes. So can you get release under 1983 if you come in with a 1983 petition that says, I'm entitled to be released because the conditions are detrimental to my health? That can't be managed in a way that will afford me constitutional protection? PLRA imposed substantial... But why isn't that a direct violation of Heffley-Humphrey? I don't see that Heffley-Humphrey is involved here, because Heffley-Humphrey relates the situations where the prisoners claim in one way or another would invalidate his conviction. That's not the issue here at all. That's not the argument here. But the argument, it seems to me, the question is, under 1983, can relief in the form of release, is that available under 1983? No. Or is 2254 the only avenue? In other words, if there is no... If you were to concede that the facilities cannot constitutionally provide constitutional conditions, constitutionally valid conditions, then what would the relief be? It would have to be release under 1983. But maybe I'm wrong. Under the PLRA, a release of prisoners order is authorized, but there are very substantial... Can you find me a single case of anybody who has been released from prison under 1983? For COVID-related reasons? For any reason. That's Plata, right? That's Plata v. Brown. Right. In the Plata case, the Supreme Court upheld an order made by a three-judge court that ordered a substantial release of prisoners from California's prison system. There are also cases... So I guess the question is, so that's an overcrowding situation? Yes. And is there something that would make it so that you could get sort of nonspecific to an individual release, but based on overcrowding, it couldn't be afforded under 1983 expeditiously if there is another pandemic that threatens to kill people based on the conditions, uncurable conditions in prison? There are several district courts that have held that the restrictions of the PLRA that specifically relate to prisoner release orders, including a three-judge court, don't necessarily apply when there's an individual who's seeking release or a smaller number of prisoners seeking release on emergency grounds. And they have provided that relief. In the district court, and after the Supreme Court upheld the California order in the Plata case, the district court was faced with a situation where there were something called valley fever that was affecting several prisons, two prisons in Southern California. And the court held that it did have the authority as a single-judge district court to grant a release order there. I think it was actually a transfer to another prison order there. And there was a decision in Detroit. The first case that I was talking about, Plata v. Brown, it was 427 F. Supp. 3, 1211. That's on remand after? That's by a single district judge in California after the Supreme Court decision. By one of the district judges that was involved in the three-judge court order that ultimately went up to the Supreme Court. Would you do me a favor before I – it's very nice to see you, but we've kept you well past your time. Would you do me a favor? And I'm going to give each side a few days to respond to this whether or not – this question of whether or not the habeas versus 1983 issue is a jurisdictional issue, akin to the mootness issue, and a five-page brief because I think that there may be differing views, understanding that the D.C. Circuit may have a different view. Can I include one additional? Of course. I think the answer is clear, but if you want to express a view on if it is jurisdictional, whether as between – whether we need to sequence in any particular – Oh, sure. Yeah. Whether we need to sequence mootness and this or whether we can choose which jurisdictional issue.  Or can we do both? I'm not sure I have a choice in the matter, but I'm happy to provide that. Okay. Before I sit down, one last point. The question earlier about what order is going to get the court in trouble with other circuits. At the end of our brief, we went through at least six or seven other circuits have faced this precise issue in the context of COVID and held that habeas is not the right remedy. We would be the first under 2254. You would be the first. You would be creating a conflict. Okay. Thank you, Mr. Becker. I'll try to hit some bullet points quickly that were addressed. First of all, on the question of the PLRA, the PLRA expressly exempts habeas petitions, saying specifically so that there is another avenue. It's not supposed to impact it. That's why Heck explains when there is an overlap between the two proceedings, habeas is the correct answer. Also, additionally, with respect to the PLRA, even the release proceedings that are there, it's a very cumbersome and extensive proceeding in comparison to a habeas proceeding. So even if you get to the release provision, it's not immediate release, which is what is possible under the habeas petition, under a habeas petition. Additionally, there's a slight overlap between Rule 23A and the capable rare petition yet evading review standard that came into play in this case. This case had been decided in time so that it wouldn't have been moot. I mean, sorry, this case had been filed in time so that it wouldn't have been moot. Opening brief was filed. Had the state responded on the merits at that time instead of moving to dismiss, this case would have been briefed in time in all likelihood before it was dismissed. That's a tough argument. No, well, it goes to fairness, and that's really what that position goes to. Fairness is sometimes significantly unfair. Understood. But it's about our power. But why can't, I mean, if you're right that it's recognizable if what you're seeking is release, I guess I don't understand why, I mean, any prisoner could bring an argument related to the conditions of confinement and assert that they need to be released. The prison can't meet those, and it's either, you know, denied or granted, but it would come up on appeal should there be appetite for a circuit to want to decide this question. I mean, it seems to me the reason it hasn't been decided is because it's really hard and not because of transfers or things like that. But I just don't know that that counts as evading review. Well, I think the other cases that were certified were all withdrawn for procedural grounds, so failure to exhaust all the state remedies, which is particularly hard in a case like this where you have such an exigency, and you have to get through so many hurdles. You're asking for that barrier. I know. I know, but the barrier is there under either statute to that extent. Different barriers, but yeah. Yes. Both tough. Right. Both tough. But knowing the importance of this court ruling on what we view as a jurisdictional question, the importance of that is so that this defendant and any future defendant knows from the beginning which statute is the right statute to use so that we don't go through this again where it's five years later and we're still asking, well, was it the right statute? So thank you very much. I'll remind you each, too, if you would submit letter briefs by close of business next Friday. Is that enough time? Thank you, Your Honor. On those issues, that would be terrific. And I think we'll reserve decision, obviously. And I believe that that completes today's argument calendar. I'll therefore ask the courtroom deputy to adjourn the court. Thank you very much. Thank you, Your Honor. Court is adjourned.